## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARK MAZZA,** | **CIVIL ACTION** |
| **Plaintiff,** | |
| **v.** | |
| **TREDYFFRIN TOWNSHIP, OFFICER HITTLE and TREDYFFRIN TWP POLICE,** | **NO. 15-4245** |
| **Defendants.** | |

## OPINION

This case arises out of an encounter between Plaintiff Mark Mazza and a Tredyffrin Township police officer, in which Plaintiff was arrested for allegedly violating a civil court order. Plaintiff brings this suit against Officer Russell Hittle ("Officer Hittle") alleging claims for false arrest, false imprisonment, and malicious prosecution under 42 U.S.C. § 1983, and related state-law claims for false arrest, false imprisonment, abuse of process, excessive force, unlawful detention and malicious prosecution. Plaintiff also sues Officer Hittle's employer, Tredyffrin Township Police, and Tredyffrin Township, asserting a claim under *Monell v. City of N.Y. Dept. of Social Servs.*, 436 U.S. 658 (1978). Before the Court is Defendants' motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, in which defendants also assert qualified immunity. For the reasons that follow, Defendants' motion is granted as to Counts I (Fourth Amendment false arrest), II (Fourth Amendment false imprisonment), III (Fourth Amendment malicious prosecution), IV (Fourth Amendment false imprisonment), and V (*Monell*); Counts VI and VII (state law claims) shall be dismissed as a matter of discretion pursuant to 28 U.S.C. § 1367(c).

## I. BACKGROUND

On July 30, 2013, Plaintiff Mark Mazza ("Mazza") was inside his residence in Chester County, Pennsylvania, when police officer Russell Hittle ("Officer Hittle") rang the doorbell. Am. Compl. ¶¶ 8, 14. Upon Mazza's opening the door, Officer Hittle ordered Mazza out of the house at gunpoint and informed him that he was being placed under arrest for indirect criminal contempt of a court order. Am. Compl. ¶ 15. Mazza responded that he had not yet received a court order, but Officer Hittle persisted and placed Mazza under arrest without incident. *Id.* at ¶¶ 15-16.

Mazza was subsequently incarcerated in Chester County Prison on a charge of indirect criminal contempt and held until August 2, 2013, when he was able to post bail. *Id.* at ¶¶ 15-16. The case was later withdrawn or dismissed by the district attorney. *Id.* Mazza maintains that the order that served as the basis for his arrest originated from a civil case, and that there were no outstanding contempt orders or warrants at the time of his arrest. *Id.* at ¶ 28.

The amended complaint further alleges that Officer Hittle "knew or should have known" that he lacked probable cause to arrest Mazza, that Officer Hittle falsely imprisoned him, and that Officer Hittle subsequently initiated a malicious prosecution against him. Am. Compl. ¶¶ 20-22. Mazza claims that as a result of his arrest and prosecution, he suffered lost income, physical pain, mental anguish, damage to his personal and business reputations, and other injuries. Am. Compl. ¶¶ 23-24. This suit followed.

## II. LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, "accepted as true," to state a claim for relief "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim

2

has facial plausibility when the factual content allows the court to draw "the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it falls short of "the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotations and citations omitted). Thus, "it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of [the proscribed conduct]." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 177 (3d Cir. 2010) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "In other words, 'there must be some showing sufficient to justify moving the case beyond the pleadings to the next stage of litigation.'" *Id.* (quoting *Phillips*, 515 F.3d at 234-35).

Determining whether a complaint meets the pleading standard involves a three-step analysis: (1) "outline the elements a plaintiff must plead to state a claim for relief"; (2) "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth"; and (3) "look for well-pled factual allegations, assume their veracity, and then 'determine whether they plausibly rise to an entitlement to relief.'" *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 679) (citations omitted).

## III. DISCUSSION

The merits of a plaintiff's Section 1983 claim are "conceptually distinct" from the merits of a defendant's assertion of qualified immunity. *Thomas v. Independence Twp.*, 463 F.3d 285, 293 (3d Cir. 2006). Neither "the language of Section 1983 nor its legislative history suggest that a plaintiff has the duty to plead facts relevant to a qualified immunity defense in order to state a claim." *Id.* at 292. However, a defendant may succeed in claiming qualified immunity at the motion to dismiss phase so long as there are sufficient facts for the court to complete the

3

requisite analysis. *Id.* After all, qualified immunity represents "immunity from suit rather than a mere defense to liability," *Pearson v. Callahan*, 555 U.S. 223, 237 (2009), and the Supreme Court has repeatedly stressed "the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

The doctrine of qualified immunity shields government officials from civil damages liability unless the official: (1) violated a statutory or constitutional right; and (2) the right was clearly established at the time of the challenged conduct. *See e.g.*, *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012); *Taylor v. Barkes*, 135 S.Ct. 2042 (2015). District courts have discretion as to the order in which to address the two-part test. *Egolf v. Witmer*, 526 F.3d 104, 110 (3d Cir. 2008); *see also Ashcroft v. al-Kidd,* 563 U.S. 731, 731 (2011). If the plaintiff fails to satisfy either prong of the test, the defendant is entitled to judgment as a matter of law. *James v. City of Wilkes-Barre*, 700 F.3d 675 (2012).

In this case, the Amended Complaint alleges, *inter alia*, that Mazza was subjected to false arrest, false imprisonment, and malicious prosecution. Am. Compl. ¶¶ 15, 25-35. Defendants argue that Mazza has failed to state a viable cause of action and that defendants are immune from suit. The Court addresses each claim in turn.

## A. False Arrest

The first question in determining whether a plaintiff has plead sufficient facts to survive a motion to dismiss is whether constitutional violation occurred, *i.e.*, "whether there is any wrong to address." *Ray v. Twp. of Warren*, 626 F.3d 170, 174 (3d Cir. 2010) (citing *Curley v. Klem*, 499 F.3d 199, 207 (3d Cir. 2007)). To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause. *James*, 700 F.3d at 680. It is axiomatic that an arrest based on

4

probable cause cannot be the source of a claim for false arrest or false imprisonment. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995).

In alleging that Mazza was arrested without probable cause, the Amended Complaint asserts that Mazza was innocent of the alleged conduct, that the order that served as the basis for the arrest was "from a civil case," and that there were no outstanding contempt orders or warrants relating to Mazza's alleged conduct. Am. Compl. ¶¶ 15, 28. There are no other facts offered as to the parameters of the court order, the source of the complaint, the basis for Officer Hittle's belief that Mazza had violated the order, or the exact conduct Mazza was alleged to have committed.

In Pennsylvania, "there is nothing inherent in a particular contemptuous act that classifies such act as either criminal or civil contempt;" even consent-based orders are enforceable by criminal contempt proceedings. *In re Contempt of Cullen*, 849 A.2d 1207 (Pa.Super. 2004); *Com. v. Nelson*, 690 A.2d 728 (Pa.Super. 1997). Moreover, police officers generally are permitted to effectuate warrantless arrests for criminal contempt committed outside of their presence. *See Valentine v. Wroten*, 580 A.3 757, 761 (Pa.Super. 1990) (criminal contempt penalties provide for "arrest upon probable cause, without warrant, whether or not the violation is committed in the presence of the police officer"). While Mazza claimed not to have received the underlying order and protested his innocence at the time of his arrest, "an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." *Panetta v. Crowley*, 460 F.3d 388, 395-96 (2d Cir. 2006); *see also Radich v. Goode*, 886 F.2d 1391, 1397 (3d Cir. 1989) ("the standard for probable cause turns not on the actual guilt or innocence of the arrestee, but rather, whether the arresting officer *reasonably* believed that the arrestee had committed the crime") (emphasis in original).

5

After stripping away the Amended Complaint's conclusory legal statements concerning probable cause, Mazza has alleged only that Officer Hittle was in possession of a court order that Mazza was accused of violating, and for which he was arrested. These facts, on their own, do not show that Officer Hittle lacked probable cause to make an arrest and, accordingly, Mazza has failed to plead that he was subjected to false arrest. *See Iqbal*, 556 U.S. at 678 (a pleading that "tenders naked assertions devoid of further factual enhancement" will not suffice) (internal citation and quotation omitted). Similarly, Mazza having failed to satisfy the first prong of the qualified immunity test by demonstrating that his constitutional rights were violated, Officer Hittle is entitled to qualified immunity on Count I (false arrest). *Egolf*, 526 F.3d at 110; *see also Saucier v. Katz*, 533 U.S. 194 (2001).

### B. False Imprisonment

To state a claim for false imprisonment, Mazza must establish that he was arrested without probable cause and was subsequently detained pursuant to that unlawful arrest. *See e.g., James*, 700 F.3d at 680. As discussed *supra*, Mazza has not alleged any facts that would support his claim that he was arrested without probable cause. *Wallace*, 549 U.S. at 388 ("[f]alse arrest and false imprisonment overlap; the former is a species of the latter"). Thus, Mazza has failed to plead a claim of false imprisonment. And, given that Mazza's Complaint contains insufficient allegations of fact to demonstrate that Officer Hittle violated his constitutional rights, Officer Hittle is entitled to qualified immunity on Counts II and IV (false imprisonment). *Saucier*, 533 U.S. at 199.

### C. Malicious Prosecution

A claim for malicious prosecution under the Fourth Amendment requires that the plaintiff show: (1) the defendant initiated a criminal proceeding; (2) the proceeding ended in the

6

plaintiff's favor; (3) the defendant initiated the proceeding without probable cause; (4) the

defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5)

the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a

consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). Mazza

claims that he was subjected to malicious prosecution when Officer Hittle knowingly initiated

criminal charges against him without probable cause.

Of primary concern is the lack of factual allegations that would establish that criminal

proceedings were ever initiated. The Amended Complaint asserts that Mazza was arrested,

incarcerated, and "scheduled for prosecution," but does not allege that a criminal complaint was

filed or identify the specific charges he faced. Am. Compl. ¶ 18. As discussed *supra*, Mazza has

not alleged facts showing that Officer Hittle lacked probable to arrest him for contempt; having

failed to identify any other charges which may have lacked probable cause, Mazza has failed to

plead a cause of action for malicious prosecution. *Cf. Johnson*, 477 F.3d at 83 ("probable cause

on one charge does not foreclose a malicious prosecution cause of action against a defendant for

having brought criminal charges involving different elements").

Similarly, Mazza has not demonstrated that a constitutional right was violated; therefore,

Officer Hittle is entitled to qualified immunity on Count III (malicious prosecution). *Saucier*,

533 U.S. at 199.

### D. *Monell* Claim

Mazza's allegations regarding Tredyffrin Township and the Tredyffrin Township Police

Department are also deficient. Mazza's claim against Tredyffrin Township Police Department

fails because "[i]n Section 1983 actions, police departments cannot be sued in conjunction with

municipalities, because the police department is merely an administrative arm of the local

7

municipality, and is not a separate judicial entity." *Padilla v. Twp. of Cherry Hill*, 110 F. App'x

272, 278 (3d Cir. 2004) (citing *DeBellis v. Kulp,* 166 F.Supp.2d 255, 264 (E.D.Pa.2001)). Thus,

in this context, only Mazza's claim against Tredyffrin Township is arguably tenable on a

municipal liability theory. However, for the following reasons that theory must fail.

Generally, a municipal entity "cannot be held responsible for the acts of its employees

under a theory of *respondeat superior* or vicarious liability." *Natale v. Camden Cnty. Corr.*

*Facility,* 318 F.3d 575, 583 (3d Cir. 2003) (citing *Monell v. N.Y.C. Dep't. of Soc. Servs.,* 436

U.S. 658, 691 (1978)). Rather, there is a "two-path track" to municipal liability, depending on

whether a Section 1983 claim is premised on municipal policy or custom:

> Policy is made when a decisionmaker possess[ing] "final authority to establish municipal
> policy with respect to the action" issues an official proclamation, policy, or edict. A
> course of conduct is considered to be a "custom" when, though not authorized by law,
> such practices of state officials [are] so permanently and well-settled as to virtually
> constitute law.

*Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 237 (3d Cir. 2013) (citations omitted).

Federal Rule of Civil Procedure 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of

entitlement to relief" that rises "above the speculative level." *Phillips*, 515 F.3d at 231-32

(quoting *Twombly*, 550 U.S. at 555 n.3). Thus, to establish Tredyffrin Township's liability under

Section 1983, Mazza must show that he was deprived of "rights, privileges, or immunities

secured by the Constitution and laws," and that an official government policy or custom caused

his injury. *Mulholland*, 706 F.3d at 238.

Mazza's *Monell* claim rests on conclusory allegations of the "unadorned, the-defendant-

wrongfully-harmed-me accusation" type specifically disallowed under *Twombly* and *Iqbal*, and

of the type the Court is required to "peel away" under Third Circuit precedent. *See Iqbal*, 556

U.S. at 678; *Bistrian*, 696 F.3d at 365. Despite three pages of allegations dedicated to his *Monell*

claim, Mazza has failed to identify any relevant "custom" or "policy." *See McTernan v. City of*

8

*York, Pa*, 564 F.3d 636, 658-59 (3d Cir. 2009). Indeed, Mazza has not presented "*any* facts

regarding an official policy or custom on the part of the . . . [Township] that caused civil rights

violations to be made against him. Instead, he offers only bald assertions that such policies or

customs existed without any support that would suggest that what happened to him . . . were not

idiosyncratic actions of individual public actors." *Burke v. Township of Cheltenham*, 742 F.

Supp. 2d 660, 675 (E.D.Pa. 2010) (emphasis in original) (citing *Hall v. Raech*, No. 08-5020,

2009 WL 811503, at *5 (E.D.Pa. Mar. 25, 2009) (refusing to dismiss *Monell* claims where the

plaintiff identified a specific training deficiency, explained why prior events should have

demonstrated the need for training, and established that the deficiency caused the constitutional

violation)).

The Supreme Court has mandated that "rigorous standards of culpability and causation"

must be satisfied to impose municipal liability. *Bd. of Comm'r v. Brown*, 520 U.S. 397, 405

(1997). Even at the motion to dismiss stage, where all inferences are drawn in Mazza's favor,

the allegations in the Amended Complaint fail to meet these standards. Accordingly, defendants'

motion to dismiss Count V (*Monell*) is granted.

### E. State Tort Claims

Mazza's remaining claims arise under state tort law. A district court may decline to

exercise pendent jurisdiction if it has dismissed all claims over which it has original jurisdiction.

*See* 28 U.S.C. § 1367(c); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988) ("wide

discretion to remand rather than to dismiss . . . best serves the principles of judicial economy,

procedural convenience, fairness to litigants, and comity to the States"); *United Mine Workers of

America v. Gibbs*, 383 U.S. 715, 726 (1966) (pendent jurisdiction "is a doctrine of discretion, not

of plaintiff's right"). Where, as here, all federal claims have been dismissed, the Court should

"properly declin[e] to exercise supplemental jurisdiction." *Roe v. Diamond*, 519 F.App'x 752, 759 (3d Cir. 2013); *see also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . [if] the district court has dismissed all claims over which it has original jurisdiction").

Accordingly, the Court declines to exercise supplemental jurisdiction and dismisses Counts VI and VII without prejudice to those claims being asserted in state court.[1]

BY THE COURT:

WENDY BEETLESTONE, J.

---

[1] "When a District Court declines to exercise supplemental jurisdiction over state law claims, the statute of limitations is tolled while the federal suit is pending and for a period of 30 days after the suit is dismissed." *Petrossian v. Cole*, 613 F. App'x 109 (3d Cir. 2015) (citing 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under subsection (a) . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period")).

10